IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| PRINCE MIGUEL ISHMAEL aka C. MIGUEL GONZALEZ-AGUILERA,<br><br>    Plaintiff,<br><br>v.<br><br>OREGON DEPARTMENT OF CORRECTIONS; C. PETERS; LIZ CRAIG, Gov't. Efficiencies & Commc'n. Admin.,<br><br>    Defendants. | Case No. 2:14-cv-01651-JO<br><br>OPINION AND ORDER |

JONES, District Judge:

Plaintiff Prince Miguel Ishmael, aka Miguel Gonzalez-Aguilera, acting pro se, sued the Oregon Department of Corrections ("ODOC") and two of its employees for violation of his First Amendment rights to free speech and free exercise of religion under 42 U.S.C. § 1983. Mr. Ishmael asks the court to declare mail rules OAR 291-131-0020(2) and OAR 291-131-0025(1) unconstitutional as they apply to the use of his religious name on correspondence. Additionally, he asks the court to enjoin defendants from applying the aforementioned rules to prevent him

from using his religious name on incoming and outgoing mail. Defendants moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. [Doc # 53] For the following reasons, defendants' motion is GRANTED.

## BACKGROUND

The following facts are undisputed. Mr. Ishmael is an inmate in the custody of the ODOC. Mr. Ishmael currently professes to be an African Hebrew Israelite of Jerusalem, and he claims the religious name "Prince Miguel Ishmael." On December 1, 2013, Mr. Ishmael filed a religious grievance request, in which he requested to use his religious name, "Prince Michael Ismael", on mail correspondence. Later, on May 21, 2014, Mr. Ishmael mailed a letter to the Assistant Administrator of Religious Services, Mr. Young, requesting that he be allowed to use his religious name on incoming and outgoing mail. Construing this letter as a request to change his name, Mr. Young denied this request on October 21, 2014. On October 17, 2014, before receiving a response to his request, Mr. Ishmael filed suit. Defendants filed the present motion for summary judgment on August 25, 2015. They argue:

(1) ODOC is not a proper defendant for plaintiff's 1983 claim and is immune from suit by the Eleventh Amendment;

(2) Plaintiff failed to exhaust his remedies through the prison's administrative review process before filing suit;

(3) Individual defendants named in this lawsuit were not personally involved in the alleged violation of plaintiff's rights;

(4) ODOC's mail rules did not violate plaintiff's First Amendment rights; and

(5) The Prison Litigation Reform Act (PLRA) bars plaintiff's claim for over-broad injunctive relief.

## LEGAL STANDARD

The district court should grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir. 1989). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party and inferences drawn from facts are viewed in the light most favorable to the non-moving party. *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 630-31 (9th Cir. 1987).

## DISCUSSION

### I. Eleventh Amendment

Absent a waiver by the state or a valid authorization from Congress, the Eleventh Amendment bars federal court action for injunctive relief against agencies of the state. *Dittman v. California*, 191 F.3d 1020, 1024 (9th Cir. 1999). The State of Oregon has not waived its sovereign immunity in this case, and the Supreme Court has explicitly held that "§ 1983 was not intended to abrogate a State's Eleventh Amendment immunity." *Kentucky v. Graham*, 473 U.S. 159, 169 n. 17 (1985). Additionally, the Oregon Department of Corrections (ODOC), as an agency of the state, is not a "person" under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989).

Accordingly, the ODOC is immune from Mr. Ishmael's suit, and defendants' motion for summary judgment is granted based on Eleventh Amendment immunity as it applies to the ODOC.

## II. Exhaustion of Administrative Remedies

Defendants contend Mr. Ishmael's lawsuit must be dismissed because he failed to exhaust available administrative remedies. The exhaustion provision of the PRLA states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C.A § 1997e(a).

Its terms are unambiguous: A prisoner cannot bring a claim into court before exhausting all available remedies. *Porter v. Nussle,* 534 U.S. 516, 524 (2002).

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones v. Bock,* 549 U.S. 199, 204 (2007). The defendant has the burden to prove that there was an available administrative remedy, which the prisoner failed to exhaust. *Albino v. Baca,* 747 F.3d 1162, 1172 (9th Cir. 2014). Once the defendant has carried that burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo,* 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted). The ultimate burden of proof, however, rests with the defendant. *Id.*

Defendants met their ultimate burden of proving that there was an available administrative remedy that the defendant failed to exhaust. Issues of a religious nature are resolved by the faculty chaplain or designee in consultation with the administrator of religious services. OAR 291-143-0140. If inmates are dissatisfied with their religious accommodations, they may seek redress through

ODOC's grievance review system (OAR 291, Division 109), or by filing a Discrimination Complaint (OAR 291, Division 6). Def. Mot. for Summary Judgment, Doc #53, at 8.

While Mr. Ishmael filed an initial grievance on December 1, 2013, he did so while professing to be a "Messianic Jew," not an "African Hebrew Israelite and Adherent of Judaism." Def. Mot. for Summary Judgment, Doc. #53, at 4 (facts not controverted by plaintiff); *See, also,* Def. Exhibit #2 at 39, Doc. #54-1 (showing Mr. Ishmael filed a religious grievance request stating he was a "Messianic Jew" on March 18, 2013). More importantly, Mr. Ishmael never specified in his grievance request form that he wanted to use his religious name in tandem with his committed name. Instead, Mr. Ishmael requested to use his religious name "Prince Michael Ismael" on incoming and outgoing mail. Pl. Exhibit #3, Doc. 42-1.

Prison officials are allowed to require the use of a committed name on mail correspondence. *Malik v. Brown,* 16 F.3d 330, 334 (9th Cir. 1994). Therefore, it was reasonable for prison officials to deny this particular grievance request. If Mr. Ishmael wishes to use his religious name in conjunction with his committed name on mail correspondence, he must properly exhaust his remedies and put defendants on notice of his requested relief before filing suit.

I grant summary judgment for failure to exhaust administrative remedies, because Mr. Ishmael failed to file a grievance based on his current religious beliefs, and failed to specify that he wanted to use his religious name in tandem with his committed name.

Generally, when the district court finds that a prisoner failed to exhaust all available administrative remedies, it should dismiss without prejudice. *Wyatt v. Terhune,* 315 F.3d 1108, 1120 (9th Cir. 2003). I consider the remaining grounds for defendants' motion to determine whether dismissal without prejudice is appropriate here.

### III. Participation of Collette Peters and Elizabeth Craig

Defendants Collette Peters and Elizabeth Craig contend they are entitled to summary judgment because they were not personally involved in the alleged constitutional violations. A state official in her personal capacity is not subject to suit under § 1983 unless the plaintiff can show that the official, acting under color of state law, caused the alleged deprivation of a federal right. *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1994 (9th Cir. 1998). Additionally, there is generally no respondeat superior liability under § 1983. *Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2001). A supervisor is only liable for a constitutional violation of his subordinate under § 1983 if (1) he was personally involved in the constitutional deprivation or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Id.*

Mr. Ishmael presents no specific facts to demonstrate that either of the defendants were personally involved in the deprivation of his civil rights or that they engaged in misconduct that caused the constitutional violation. Therefore, he cannot sue the defendants in their personal capacities.

However, the same standard does not apply when state officials are sued in their official capacities for prospective injunctive relief. When the relief sought is partly prospective (i.e. to prevent future harm to plaintiff), then the suit is for prospective injunctive relief. *See Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (suit was not barred by the Eleventh Amendment, because the sought-after injunctions served the purpose of preventing present and future harm and

could thereby not be characterized solely as retroactive injunctive relief). Therefore, Mr. Ishmael's suit is a suit for prospective injunctive relief.

When sued for prospective injunctive relief, state officials are considered to be "persons" for the purposes of § 1983, because "official capacity actions for prospective injunctive relief are not treated as actions against the state." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, n. 10 (1989) (internal citations and quotation marks omitted). Moreover, the defendants need not be personally involved in the alleged constitutional violations when sued in their official capacities for prospective injunctive relief. *See Brandon v. Holt,* 469 U.S. 464. 471 (1985) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). Instead, the plaintiff must allege that a government "policy or issue" played a role in the constitutional violation. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985).

Aside from the exhaustion issue, a suit for prospective injunctive relief against these defendants in their official capacities would be appropriate, because Mr. Ishmael alleged that the ODOC's mail policy played a role in the constitutional violation. *Graham,* 473 U.S. at 166. Defendant Collette Peters in her official capacity is responsible for "the daily operation of the prisons and all Department of Correction employees." Defendant Elizabeth Craig in her official capacity "oversees the rules and polic[ies] . . . for the Department of Corrections." Pl. Am. Compl., Doc. # 15, at 3. Elizabeth Craig and Collette Peters are appropriate defendants, because their office would presumably have some responsibility in implementing an order of injunctive relief. *See Pouncil v. Tilton,* 704 F.3d 568, 576 (9th Cir. 2012) (concluding that "[s]ecretary of the CDCR, is the proper defendant on a claim for prospective injunctive relief from a prison regulation, because he would be responsible for ensuring that the injunctive relief was carried out . . .").

Finally, while Mr. Ishmael sued Elizabeth Craig in her individual capacity, that error does not end the matter. Mr. Ishmael filed this action pro se, and the court as a general rule construes pro se complaints liberally. *Tilton,* 704 F.3d at 574. This liberal construction is "particularly important in civil rights cases." *Id.* (Internal citation and quotation marks omitted). Unless it is absolutely clear that a pro se claimant's deficient pleading cannot be cured by amendment, he should be permitted an opportunity to replead. *Broughton v. Cutter Labs,* 622 F.2d 458, 460 (9th Cir. 1980). Accordingly, this argument for summary judgment in favor of Collette Peters and Elizabeth Craig in their official capacities cannot be sustained.

### IV. First Amendment Violation

The defendants also claim that summary judgment should be granted on the merits. To state a free exercise claim, a plaintiff must demonstrate, as a threshold matter, that (1) the proffered belief is sincerely held; and (2) the claim is rooted in religious belief, not in purely secular concerns. *Malik v. Brown,* 16 F.3d at 333. "The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElya v. Babbitt,* 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (citations omitted). To that end, a prisoner must also show that the justification for the state's infringement was not reasonably related to a legitimate penological interest. *Walker v. Beard,* 789 F.3d 1125, 1138 (9th Cir. 2015).

Defendants contend Mr. Ishmael's belief is not sincere, his claim is not rooted in religion, and their mail policy as applied to Mr. Ishmael furthers a legitimate, penological interest.

### A. Sincerity of Mr. Ishmael's Religious Beliefs

Defendants claim that Mr. Ishmael's belief is not sincerely held, because Mr. Ishmael has filed multiple requests for religious accommodation and asserted a number of different religious faiths. On September 4, 2008, for example, Mr. Ishmael requested a "halal diet" and identified himself as a Muslim. On January 17, 2012, Mr. Ishmael later claimed to be Jewish, requesting a kosher diet. On March 18, 2013, in another religious accommodation request for a kosher diet, Mr. Ishmael clarified that he was a "Messianic Jew" and that he was "not required to have Jewish lineage to practice a religion." Def. Exhibit #2 at 39, Doc. #54-1. Most recently, in his letter to Mr. Young dated September 14, 2014, Mr. Ishmael claimed that he was a "sincere believer in the Jewish faith and an African Hebrew Israelite of Jerusalem." Def. Exhibit #3 at 1, Doc. #54-1.

While Mr. Ishmael's varied professed faiths may cast doubt on the sincerity of his current belief, this fact in and of itself does not mandate summary judgment for defendants as a matter of law. The Supreme Court has tended to presume the sincerity of religious beliefs, and it has indicated that the timing of one's religious conversion is immaterial in the free exercise context. *See, e.g., Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 144 n. 9 (1987) ("So long as one's faith is religiously based at the time it is asserted, it should not matter, for constitutional purposes, whether that faith derived from revelation, study, up-bringing, gradual evolution, or some source that appears entirely incomprehensible."); *Ehlert v. United States*, 402 U.S. 99, 103 (1970) (conscientious objector claims cannot be disposed of on the merits because the views were "late in crystallizing"). Additionally, the Supreme Court has determined that, at least in the context of addressing religious exemptions from military service, "the threshold question of sincerity" is a "question of fact."

*United States v. Seeger*, 380 U.S. 163, 185 (1965). I conclude the sincerity of Mr. Ishmael's belief is a question of fact that cannot be resolved as a matter of law on the present record.

### B. Claim Deeply Rooted in Religious Belief

Defendants next contend that, even if Mr. Ishmael's beliefs are sincere, his claim is not deeply rooted in religious belief. According to defendants, Mr. Ishmael admitted as much in his letter to Mr. Young, where he stated "use of a religious name is not compelled by or central to my system of religious belief but using my religious name 'Prince Miguel Ishmael' is a part of the way I practice and express my religious beliefs, and is hence, a religious exercise." Def. Mot. for Summary Judgment, Doc. #53, at 12; Def. Exhibit #3 at 2, Doc. #54-1.

To be deeply rooted in religious belief, a plaintiff's claim need not be compelled by or central to his religion. *See Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to the faith, or the validity of particular litigants' interpretation of those creeds."); *Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008) ("Here the district court impermissibly focused on whether 'consuming Halal meat is required of Muslims as a central tenet of Islam,' rather than on whether Shakur sincerely believes eating kosher meat is consistent with his faith."); *Callahan v. Woods*, 658 F.2d 679, 685 (9th Cir. 1981) ("A religious belief can appear to every other member of the human race preposterous, yet merit the protection of the Bill of Rights.").

Instead, to be rooted in religious belief, the plaintiff's claim need only be related to his sincerely held religious belief. In *Malik v. Brown*, for example, the court concluded that the claimant's adoption of a Muslim name was rooted in religious belief because it represented an "exercise of religious freedom" related to his conversion to Islam. *Malik v. Brown*, 16 F.3d at 333.

Here, Mr. Ishmael claims that his desire to use a religious name is "a religious exercise", Pl. Am. Resp., Doc. #42, at 15, and defendants make no contention to the contrary. *See, also, Callahan v. Woods,* 658 F.2d 679, 684 (9th Cir. 1981) (concluding that plaintiff's distaste for social security numbers was related to his religious beliefs, even though he also opposed social security numbers on secular grounds prior to his religious conversion). Whether Mr. Ishmael's use of his religious name is related to a sincere religious belief is a factual issue.

### C. Legitimate Penological Interest

Defendants contend ODOC rules requiring inmates to use only their committed name on written correspondence promotes the efficient processing of mail. A prison regulation that requires the use of an inmate's committed name to the exclusion of a religious name, however, is unreasonable. *Malik v. Brown,* 16 F.3d at 334.

As noted previously, Mr. Ishmael failed to pursue administrative remedies regarding the use of both his religious name and his committed name together on correspondence. His complaint specifies, however, that he seeks to exercise his religion by using both his religious name and his committed name on envelopes. In addition, he claims he attempted to mail letters containing both his committed and religious names, only to have staff return those letters to him, stating he must "only use his committed name." Pl. Am. Compl., Doc. #15, at 4-5. In light of *Malik v. Brown*, questions remain as to whether the ODOC mail regulations as applied to Mr. Ishmael are reasonably related to a legitimate penological interest.

### V. Overbroad injunctive relief

Defendants contend they are entitled to summary judgment because the injunctive relief Mr. Ishmael seeks is overly broad. Under the PLRA, prospective relief in any civil action must be

narrowly tailored to correct the constitutional violation. 18 U.S.C. § 3626(a)(1)(A). Mr. Ishmael seeks the following relief: First, he asks that the court declare mail rules OAR 291-131-0020(2) and OAR 291-131-0025(1) unconstitutional as they apply to the use of his religious name on correspondence. Second, he asks that the court declare that defendants violated his rights by prohibiting him from using his religious name in tandem with his committed name on incoming and outgoing mail. Third, he asks that the court prevent defendants from applying the aforementioned rules to the use of his religious name on incoming and outgoing mail. Pl. Am. Compl., Doc #15, at 6.

Defendants contend that Mr. Ishmael's requested relief is overly broad, "because it would invalidate the ODOC mail rules as applied to him in whole, rather than in part." Def. Mot. for Summary Judgment, Doc #53, at 15. As I construe Mr. Ishmael's complaint, he seeks to invalidate only the application of these rules that prohibit him from using his religious name in tandem with his committed name. This interpretation constitutes a narrowly tailored request for relief, and I therefore reject defendants' argument in favor of summary judgment on this ground.

## CONCLUSION

For all the foregoing reasons, defendants' motion for summary judgment [# 53] is GRANTED. Plaintiff's claims against ODOC are dismissed with prejudice. Plaintiff's claims against Collette Peters and Elizabeth Craig are dismissed without prejudice for failure to exhaust administrative remedies.

IT IS SO ORDERED.

DATED this 6th day of October, 2015.

Robert E. Jones
United States District Judge